UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CHRISTOPHER T. WILLIS, et al.,

      Plaintiffs,

v.                     CIVIL ACTION NO. 2:14cv652

CITY OF VIRGINIA BEACH,
and its POLICE DEPARTMENT, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the court on the Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion") and accompanying Memorandum in Support, filed by the City of Virginia Beach (the "City") and Virginia Beach Chief of Police James A. Cervera ("Cervera") (collectively, the "Defendants"). ECF Nos. 2, 10. The Plaintiffs —— Christopher T. Willis ("Willis"), Thomas C. Shattuck ("Shattuck"), and Jeffery E. Wilkerson ("Wilkerson") —— filed their Memorandum in Opposition on January 27, 2015, ECF No. 11, and the Defendants filed their Rebuttal on February 2, 2015. ECF No. 12. This matter has been fully briefed and is ripe for review.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Because this case arises from a motion to dismiss under Rule 12(b)(6), the facts as alleged in the Complaint are assumed to be true and viewed in the light most favorable to the Plaintiffs.[1] In essence, the Plaintiffs allege that they were wrongfully disciplined by their employers, the Defendants, in connection with their positions as supervisors on the Virginia Beach Police Department's ("VBPD") SWAT Team.

The Plaintiffs are veteran VBPD officers and were, at all times relevant herein, members of the VBPD SWAT Team. Compl. ¶¶ 1-4. The SWAT Team is a "specialized tactical unit that is used when there is a high probability of a life threatening situation or an armed encounter." Id. ¶ 9. SWAT Team members receive extensive training "in nuclear, biological and chemical environments, explosive breaching threat assessment as well as terrorist bombings and other areas of tactical response." Id. ¶ 10.

Before becoming a full SWAT Team member, all VBPD officers selected to join the SWAT Team must first undergo a probationary period involving rigorous, specialized training. Id. ¶ 18. Nicole Kosmas ("Kosmas"), a female VBPD officer, was chosen for a position with the SWAT Team in January 2009. Id. ¶ 16.[2]  The

_____

[1] See infra Part II.

[2] Kosmas joined the VBPD in 2003 and was eventually promoted to the rank of Master Police Officer ("MPO"); when she joined the SWAT

Plaintiffs served as Kosmas' supervisors at various times during her tenure on the SWAT Team, both during her probationary period and after she qualified as a full member. Id. ¶ 17.

The Plaintiffs contend that "[f]rom the beginning of her assignment on the SWAT Team, Kosmas consistently failed to meet the requirements of the position." Id. ¶ 20. The Complaint details Kosmas' alleged shortcomings at length, see id. ¶¶ 21-48, but in summary, the Plaintiffs claim that from the moment Kosmas was selected to join the SWAT Team, she repeatedly fell short of the skill level necessary to ensure the safety of the public and her fellow officers. Furthermore, the Plaintiffs allege that Kosmas reacted with hostility to constructive criticism and demonstrated an "intolerable attitude, and disrespectful and antagonistic behavior, and lack of accountability" to her superiors. Id. ¶ 45. Conflict between Kosmas and her fellow officers escalated throughout 2011 and 2012, and Kosmas' superiors, including the Plaintiffs, eventually recommended that she be transferred out of the SWAT Team. Id. However, Kosmas retained counsel, and after she and her attorney met with Cervera, it was determined that she would remain with the SWAT Team and her deficiencies would be resolved internally. Id. ¶ 46. Nevertheless, the Plaintiffs continued to lodge their complaints with Cervera about Kosmas' "incompetence as well as her inability to operate in stressful

---

Team, she became the first female VBPD officer to do so. Ex. 6 to Pls.' Mem. Opp'n at 6-7, ECF No. 11-6.

situations" and "informed Kosmas on multiple occasions that [her] performance was substandard." Id. ¶ 48.

On August 7, 2012, Kosmas filed a Charge of Discrimination with the Equal Opportunity Employment Commission ("EEOC"). Ex. 1 to Pls.' Mem. Opp'n at 1, ECF No. 11-1. Kosmas alleged that she had been harassed and treated disparately from her male colleagues, and had been retaliated against for her complaints of violations of Title VII of the Civil Rights Act of 1964. Id. at 1-2. The City filed its EEOC Position Statement, in which it characterized Kosmas' charge as the baseless assertions of a "disgruntled employee who refuses to accept the consequences of her own actions," and vehemently denied any suggestion of gender-based discrimination. Ex. 2 to Pls.' Mem. Opp'n at 19, ECF No. 11-2. The City's Position Statement extensively reviewed Kosmas' tactical skill deficiencies, her difficulty handling herself in stressful situations, and her poor attitude, particularly in response to criticism from supervising officers. Id. at 3-12.

The EEOC issued a right-to-sue letter to Kosmas, and on February 10, 2014, Kosmas filed suit in this federal court against the City, the VBPD, Cervera, all three Plaintiffs, and several other supervisory SWAT Team officers. Ex. 6 to Pls.' Mem. Opp'n, ECF No. 11-6. In her complaint, Kosmas sought monetary damages, as well as declaratory and injunctive relief, for various iterations of gender discrimination, including a hostile work environment,

4

disparate treatment, and retaliation. Id. at 2-3.

According to the Plaintiffs, the Defendants supported them against Kosmas' claims, until Kosmas filed suit. Compl. ¶ 53. It was not until after Kosmas filed her complaint that the VBPD opened an internal investigation into her allegations of gender discrimination, and the Defendants changed their position vis-à-vis the Plaintiffs' culpability. Id. ¶¶ 54-55.

In early September 2014, Cervera met with each of the Plaintiffs separately to inform them that they were being charged with violating VBPD rules. Id. ¶¶ 56, 61, 65. The memorandum of charges provided to each Plaintiff cited their "awareness that [their] subordinates were engaging in inappropriate sexual, racial and/or religious behaviors in the form of statements and physical gestures." Id. ¶ 57; see id. ¶¶ 61, 65. Additionally, the memorandum provided to Wilkerson cited his "failure to take action to stop behavior that 'could be considered offensive.'" Id. ¶ 56. The Plaintiffs all denied any wrongdoing. Id. ¶¶ 58, 62, 66.

In mid-October 2014, Cervera circulated a memorandum to the entire VBPD entitled "Expectations for Conduct." Ex. 13 to Pls.' Mem. Opp'n, ECF No. 11-13. The memorandum calls for all VBPD officers to treat each other with respect and espouses a zero-tolerance policy for the use of racial, gender-based, or religious slurs, as well as for the viewing or sharing of sexually explicit materials, by members of the VBPD. Id. According to the

Plaintiffs, the VBPD had no policy or procedure related to this type of misconduct prior to Cervera circulating the memorandum. Compl. ¶ 70. Just days later, Cervera provided each of the Plaintiffs with a Notice of Disciplinary Action. Id. ¶¶ 60, 64, 68. Wilkerson and Shattuck were both suspended for twenty hours, and Willis was suspended for forty hours. Id. The Plaintiffs allege that other supervisory SWAT Team members, who "either had no relationship to the Kosmas case or had not been vocal in alerting the Defendants" to the problems with Kosmas, "received either zero discipline or lesser discipline." Id. ¶ 71. This, the Plaintiffs contend, establishes the "arbitrary and pretextual nature" of their suspensions, and forms the basis of their claims for relief. Id.

## II. STANDARD OF REVIEW

Pursuant to Rule 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint; it does not resolve contests surrounding the facts of the case, the merits of a claim, or the applicability of any defense. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992).[3] "To survive a

---

[3] In their Memorandum in Support of their Motion to Dismiss, the Defendants allude to, but do not squarely present, a defense of qualified immunity. See Defs.' Mem. Supp. at 14. Because the defense was not clearly raised, the court will not address it. However, even if the Defendants had asserted qualified immunity,

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility means that a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). It is, therefore, not enough for a plaintiff to allege facts demonstrating a "sheer possibility" or "mere[] consist[ency]" with unlawful conduct. Id. (citing Twombly, 550 U.S. at 557).

The Supreme Court, in Twombly and Iqbal, offered guidance to courts evaluating a motion to dismiss:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 556 U.S. at 679. That is, the court accepts facts alleged

---

the disposition of this Motion would not likely change. See Owens v. Baltimore City State's Attorney's Office, 767 F.3d 379, 396 (4th Cir. 2014) ("A qualified immunity defense can be presented in a Rule 12(b)(6) motion, but . . . the defense faces a formidable hurdle and is usually not successful.") (internal quotation marks omitted); see also McVey v. Stacy, 157 F.3d 271, 278-79 (4th Cir. 1998) (affirming district court's decision to defer deciding qualified immunity until the "record is better developed").

in the complaint as true and views those facts in the light most favorable to the plaintiff. E.g., Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005). After so doing, the court should not grant the Defendants' Motion, if the Plaintiffs "demonstrate more than 'a sheer possibility'" that the Defendants have violated their rights, by "articulat[ing] facts, when accepted as true, that 'show' that the [Plaintiffs have] stated a claim entitling [them] to relief." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 677-78).

In resolving this Motion, therefore, the court will assume that the Defendants disciplined the Plaintiffs, not for any valid purpose, but instead to retaliate against the Plaintiffs for voicing legitimate concerns about Kosmas' job performance, and to shield themselves from liability in Kosmas' civil suit for gender discrimination. The court may consider the facts alleged on the face of the Complaint, as well as "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." Silverman v. Town of Blackstone, 843 F. Supp. 2d 628, 631 (E.D. Va. 2012) (citations omitted). The court may also look to documents incorporated by reference in the Complaint without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. See id. (citing Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004)).

## III. ANALYSIS

### A. Count I — Wrongful Suspension in Violation of Virginia Public Policy

Count I of the Complaint alleges that the Plaintiffs were wrongly suspended from the VBPD, in violation of the public policy underlying Virginia law, and, as a direct result, they "lost promotions, transfers, pay opportunities and many other benefits of employment." Compl. ¶¶ 75, 79. The Plaintiffs contend that the temporary suspensions they received for voicing their concerns about Kosmas' incompetence violated three distinct public policies of the Commonwealth of Virginia: (1) a policy favoring competent and well-trained law enforcement, as evidenced by Virginia Code §§ 9.1-114 and 9.1-115; (2) a policy of ensuring workplace safety, as evidenced by Virginia Code § 40.1-51.2:1; and (3) a policy encouraging local employees to express opinions on matters of public concern, as evidenced by Virginia Code § 15.2-1512.4. Compl. ¶¶ 76-78.

The Plaintiffs model their claims for wrongful suspension after the recognized cause of action for wrongful termination under Virginia law. Virginia adheres to the common law doctrine of employment-at-will, under which a term of employment is presumed to extend indefinitely and may be terminated by either employer or employee, for any reason, upon reasonable notice. E.g., County of Giles v. Wines, 262 Va. 68, 72, 546 S.E.2d 721, 723 (2001). However, Virginia recognizes an exception to the doctrine of

employment-at-will "based on an employer's violation of public policy in the discharge of an employee." Rowan v. Tractor Supply Co., 263 Va. 209, 213, 559 S.E.2d 709, 710 (2002) (citing the seminal Virginia case establishing the exception, Bowman v. State Bank of Keysville, 229 Va. 534, 331 S.E.2d 797 (1985)). Lawsuits brought under this exception are known as "Bowman claims," and the Supreme Court of Virginia "has consistently characterized such exceptions as 'narrow.'" City of Va. Beach v. Harris, 259 Va. 220, 232, 523 S.E.2d 239, 245 (2000) (citing Lawrence Chrysler Plymouth Corp. v. Brooks, 251 Va. 94, 98, 465 S.E.2d 806, 809 (1996); Lockhart v. Commonwealth Educ. Sys. Corp., 247 Va. 98, 104, 439 S.E.2d 328, 331 (1994); Bowman, 229 Va. at 540, 331 S.E.2d at 801). Bowman's breadth is "limited to discharges which violate . . . the policy underlying existing laws designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general." Miller v. SEVAMP, Inc., 234 Va. 462, 468, 362 S.E.2d 915, 918 (1987) (emphasis added).

No court in Virginia, either state or federal, has ever extended Bowman to the mere suspension of employment, rather than actual termination, and the court declines to do so here. The doctrine of employment-at-will concerns the ability of an employer and employee to terminate the employment relationship; it has nothing to do with the power of an employer to temporarily suspend

employment or otherwise discipline its employees.[4] Because *Bowman* claims are an <u>exception</u> to the employment-at-will doctrine, by definition, they cannot arise when employment is not terminated. Furthermore, Virginia courts have refused to extend the exception even to constructive discharge, which is much more closely analogous to a true *Bowman* claim than the instant case.[5] See <u>Michael v. Sentara Health Sys.</u>, 939 F. Supp. 1220, 1232 (E.D. Va. 1996); <u>Gastyne v. Entrust, Inc.</u>, 2010 WL 3418235, at \*11 (E.D. Va. Aug. 24, 2010); <u>Jones v. Prof'l Hospitality Res., Inc.</u>, 35 Va. Cir. 458, at \*3 (1995); <u>Wright v. Donnelly & Co.</u>, 28 Va. Cir. 185, at \*2 (1992).

In this case, Wilkerson and Shattuck were suspended from duty for twenty hours, and Willis was suspended from duty for forty hours. Compl. ¶¶ 60, 64, 68. Thereafter, all three Plaintiffs resumed their duties as full members of the VBPD SWAT Team. Regardless of the promotions, pay opportunities or other benefits of employment the Plaintiffs may have lost, <u>id.</u> ¶ 79, the discipline they received did not amount to termination from

---

[4] The discharge of an at-will employee becomes tortious by virtue of "the employer . . . misus[ing] its freedom to terminate the services of" such an employee. <u>Miller</u>, 234 Va. at 467, 362 S.E.2d at 918.

[5] An employee is constructively discharged when an employer deliberately makes the work conditions intolerable, thereby inducing the employee to quit. <u>Bristow v. Daily Press, Inc.</u>, 770 F.2d 1251, 1255 (4th Cir. 1985) (internal citations omitted). Thus, unlike the Plaintiffs' temporary suspensions, constructive discharge does involve the termination of employment.

employment. Therefore, <u>Bowman</u> and its progeny are inapplicable to the Plaintiffs' case.

Because the court finds that Virginia does not recognize a cause of action for wrongful suspension in violation of Virginia public policy, the court need not address whether the Plaintiffs' suspensions were contrary to the policies underlying the statutes cited in the Complaint. Accordingly, Count I is **DISMISSED** for failure to state a claim upon which relief can be granted.

**B. Counts II and III — Retaliation Under Article I, Section 12 of the Virginia Constitution and the First Amendment to the United States Constitution**

Counts II and III of the Complaint allege, respectively, that the Plaintiffs were disciplined in violation of their right to free speech, guaranteed by Article I, Section 12 of the Virginia Constitution,[6] and by the First Amendment to the United States Constitution. The Plaintiffs contend that, in voicing their concerns about Kosmas' incompetence as a SWAT officer and the safety risks she created, and recommending that she be transferred out of the unit, they engaged in constitutionally protected

---

[6] Article I is the Virginia Constitution's Bill of Rights, and Section 12 provides in part that:

> any citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of that right; [and] that the General Assembly shall not pass any law abridging the freedom of speech or of the press, nor the right of the people peaceably to assemble, and to petition the government for the redress of grievances.

Va. Const. Art. I § 12.

expression. Compl. ¶¶ 85, 94. The Plaintiffs further argue that the Defendants retaliated against them for exercising these rights, by suspending them after Kosmas filed her civil complaint. Id. ¶¶ 86, 97.

The Supreme Court of Virginia has held that "Article I, § 12 of the Constitution of Virginia is coextensive with the free speech provisions of the federal First Amendment." Elliott v. Commonwealth, 267 Va. 464, 473-74, 593 S.E.2d 263, 269 (2004); see also Key v. Robertson, 626 F. Supp. 2d 566, 583 (E.D. Va. 2009); Lee v. York Cnty. Sch. Div., 418 F. Supp. 2d 816, 835 (E.D. Va. 2006). Thus, although Counts II and III arise under different sources of constitutional law, the analysis is the same for both.

It has long been established that public employees, such as the Plaintiffs, may not "constitutionally be compelled to relinquish the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest." Pickering v. Bd. of Educ., 391 U.S. 563, 568 (1968). However, safeguarding such rights "does not require a public office to be run as a roundtable for employee complaints over internal office affairs." Connick v. Myers, 461 U.S. 138, 149 (1983). Therefore, the court must strike the proper balance between a public employee's right to speak on matters of public concern, and the employer's right to run efficient, functional operations. Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337, 351 (4th Cir. 2000) (citing

<u>Connick</u>, 461 U.S. at 142).

To make such a determination, the Court of Appeals for the Fourth Circuit has adopted a three-part test to determine whether a public employee has stated a claim for retaliation in violation of his right of free speech. <u>Brooks v. Arthur</u>, 685 F.3d 367, 371 (4th Cir. 2012) (citing <u>McVey v. Stacy</u>, 157 F.3d 271 (4th Cir. 1998); <u>Daniels v. Quinn</u>, 801 F.2d 687 (4th Cir. 1986)). The court must consider:

> (1) whether the public employee was speaking as a citizen upon a matter of public concern or as an employee about a matter of personal interest; (2) whether the employee's interest in speaking upon the matter of public concern outweighed the government's interest in providing effective and efficient services to the public; <u>and</u> (3) whether the employee's speech was a substantial factor in the employee's termination decision.

<u>McVey</u>, 157 F.3d at 277-78 (emphasis added) (internal citations omitted). The first prong, whether the speech addressed a matter of public concern, is "[t]he threshold question." <u>Rankin v. McPherson</u>, 483 U.S. 378, 384 (1987). If an employee's speech "cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary . . . to scrutinize the reasons for [the employee's] discharge." <u>Connick</u>, 461 U.S. at 146.

### 1. Speech on a Matter of Public Concern

There are no "sharp lines" for when a public employee's speech touches a matter of public concern. <u>Brooks</u>, 685 F.3d at 371. At an abstract level, however, "[s]peech involves a matter of

14

public concern when it involves an issue of social, political, or other interest to a community." Kirby v. City of Elizabeth City, 388 F.3d 440, 446 (4th Cir. 2004) (citing Connick, 461 U.S. at 146). By contrast, "[p]ersonal grievances, complaints about conditions of employment, or expressions about other matters of personal interest do not constitute speech about matters of public concern that are protected by the First Amendment." Stroman v. Colleton Cnty. Sch. Dist., 981 F.2d 152, 156 (4th Cir. 1992) (citing Connick, 461 U.S. at 147). Moreover, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006). To determine into which category the Plaintiffs' speech falls, the court must consider "the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48.

The difficulty here is that, at this early stage of the proceedings, there is barely any record from which to glean the content, form, and context of the Plaintiffs' statements regarding Kosmas. The Plaintiffs have alleged that they recorded all of Kosmas' "multiple acts of incompetence as well as her inability to operate in stressful situations" and repeatedly brought these

15

issues to Cervera's attention. Compl. ¶ 48.[7] They contend that they expressed their concerns about Kosmas to their superiors because of "the safety risks attendant to her performance on the SWAT Team," id. ¶ 85, and their potential effect on "the safety and well-being of citizens of the City of Virginia Beach." Id. ¶ 95. Taking the allegations in the Complaint as true, Kosmas did not have the trust of her fellow SWAT Team members and struggled, on numerous occasions, with comporting herself appropriately in high-stress, highly dangerous situations. See, e.g., id. ¶¶ 36, 41-42. Given the nature of the work that a SWAT Team does, such performance issues create a serious risk of injury or even death, not only to other officers, but also to members of the public, whom VBPD officers are sworn to serve and protect. That type of threat, as alleged in the Complaint, implicates issues of concern to the public.

Furthermore, it is not clear on the face of the Complaint that all of the Plaintiffs' speech was made "pursuant to their official duties" as supervisory SWAT Team officers. Garcetti, 547 U.S. at 421. Although the Plaintiffs raised some of their concerns about Kosmas through so-called "performance notes," see Compl. ¶¶ 26, 31, which presumably were part of the Plaintiffs' official

---

[7]   The fact that the Plaintiffs did not express their views publicly, but rather within the confines of the VBPD, is not dispositive. Garcetti, 547 U.S. at 420 (noting that "[e]mployees in some cases may receive First Amendment protection for expressions made at work").

duties as Kosmas' superior officers, the record at this early stage is insufficient to allow the court to determine whether all of the Plaintiffs' speech regarding Kosmas was thusly made. While the court is mindful of the Supreme Court's admonition to guard against "attempt[s] to constitutionalize the employee grievance," Connick, 461 U.S. at 154, at this stage of the pleadings, the Plaintiffs have plausibly alleged that their speech was of public concern, thereby implicating constitutional protection, which is all that is required for purposes of a motion under Rule 12(b)(6). See Iqbal, 556 U.S. at 678.

Indeed, the facts of this case as set forth in the Complaint are comparable to other decisions in which the Fourth Circuit found that public employee speech merited First Amendment protection. First, the Fourth Circuit held in Cromer v. Brown, 88 F.3d 1315 (4th Cir. 1996), that a letter of complaint from an association of African-American law enforcement officers to their supervising sheriff spoke to matters of public concern. Id. at 1326. The letter, which detailed allegations of systemic racial discrimination, "prompted an expression of concern about the inability of the sheriff's office to carry out its vital public mission effectively." Id. at 1325-26. Importantly, "the letter was not the expression of a single disgruntled employee about a personal employment dispute," and therefore the authors of the letter spoke as private citizens entitled to First Amendment

protection, rather than as public employees. Id. at 1326.

Second, the Fourth Circuit concluded in Goldstein v. Chestnut Ridge Volunteer Fire Co., 218 F.3d 337 (4th Cir. 2000), that a firefighter's complaints about inadequate training and equipment, as well as unsafe procedures during emergency calls were matters of public concern. Id. at 354. The Fourth Circuit was careful to distinguish between matters of training and safety, which merited First Amendment protection, and the firefighter's other complaints, which dealt with "matters of internal policy, favoritism, and other employment-related matters" and were therefore not of public concern. Id. at 353.

Finally, in Campbell v. Galloway, 483 F.3d 258 (4th Cir. 2007), the Fourth Circuit found that a female police officer's complaints "that male officers did not back her up on dangerous calls" and that she was subject to inappropriate conduct because of her gender "raise[d] issues that would be of genuine concern to the public." Id. at 269-70. Because the female officer sought to address an issue affecting the department "as much as she was seeking a resolution of her own complaint," the officer's speech was protected under the First Amendment, and she could therefore proceed with her claim for retaliation. Id. at 270.

As a point of contrast, the Fourth Circuit found in Brooks v. Arthur, 685 F.3d 367 (4th Cir. 2012), that two corrections officers' complaints of racially disparate treatment by superiors

were not of public concern. Id. at 373. The panel distinguished the foregoing cases from the complaints of the corrections officers on the grounds that their complaints merely recounted "personal dissatisfactions" and depicted "poor personal chemistry in the workplace," not expression on a "constitutional plane." Id. at 372-73.[8]

Here, although the Plaintiffs' complaints focused on one officer's conduct, they do appear to be concerned with the SWAT Team's ability to carry out its vital public mission effectively. They allege that Kosmas' presence on the SWAT Team created a safety hazard, both for the public and her fellow officers, Compl. ¶ 71, and "[i]f favoritism crosses a line to the point that imperils the public welfare, . . . then the public would rightly be concerned about the matter." Brooks, 685 F.3d at 375. The Plaintiffs and Kosmas clearly did not get along, and discovery may yet reveal this matter to be no more than a "quintessential employee beef" unencumbered by constitutional significance. Haynes v. City of Circleville, 474 F.3d 357, 365 (6th Cir. 2007). However, for purposes of Rule 12(b)(6), the Plaintiffs have plausibly alleged that their speech touched on a matter of public concern, thereby satisfying the first prong of the McVey test.

---

[8] Importantly, the matter in Brooks came to the Fourth Circuit on appeal from an order granting summary judgment; at that post-discovery stage of the proceedings, there was a more detailed record with which the content, form, and context of the employees' statements could be examined. Id. at 370.

## 2. Balance of Employee and Employer Interests

The court must next assess the second prong under McVey and determine whether the Complaint plausibly alleges that the Plaintiffs' interest in expression outweighed the Defendants' interest in providing effective and efficient services to the public. McVey, 157 F.3d at 277. In weighing these competing interests, the court "must take into account the context of the employee's speech, including the employee's role in the government agency, and the extent to which it disrupts the operation and mission of the agency." Id. at 278 (citing Rankin, 483 U.S. at 388-91). This is an inherently fact-specific inquiry, and there are numerous factors that may be relevant, including, but not limited to, whether the Plaintiffs' speech (1) impaired discipline by superiors, (2) impaired harmony among co-workers, (3) had a detrimental impact on close working relationships, (4) impeded the performance of the Plaintiffs' duties, (5) interfered with the operation of the SWAT Team and that of the VBPD at large, (6) undermined the VBPD's mission, (7) was communicated publicly or to co-workers in private, (8) conflicted with the Plaintiffs' responsibilities as employees, or (9) invoked the authority and public accountability which the Plaintiffs' roles entailed. Ridpath v. Bd. of Governors, 447 F.3d 292, 317 (4th Cir. 2006) (citing McVey, 157 F.3d at 278). Many of these factors overlap with the inquiry into whether the Plaintiffs' expression regarded

a matter of public concern.

In the instant case, nothing in the Complaint indicates, for example, that the concerns the Plaintiffs brought to their superiors about Kosmas' deficiencies as a SWAT officer impaired the maintenance of discipline, hurt workplace morale, or impeded the Plaintiffs from carrying out their duties as supervising officers. Moreover, the Defendants have not suggested how, or even that, the Plaintiffs' complaints interfered with the VBPD's efficient operation. Considering the context of the Plaintiffs' speech at this early stage of the proceedings, the Plaintiffs may ultimately be able to show that their interest in expressing their views outweighed the Defendants' interest in the efficient operation of the SWAT Team or the VBPD at large.

On the other hand, once the factual record is developed through discovery, the evidence might support the inference that the operations of the VBPD, and specifically the SWAT Team, were impaired as a result of the Plaintiffs airing their complaints, and that, therefore, the discipline they received was justified. That determination may not be assessed under this Rule 12(b)(6) Motion, but is best addressed in Rule 56 summary judgment proceedings. See McVey, 157 F.3d at 278-79 (affirming district court's determination that plaintiff stated a retaliation claim when the complaint did not "resolve on its face" the second prong of the test, and remanding for the "record [to be] better

21

developed"). At the Rule 12(b)(6) stage, the Plaintiffs'
allegations warrant the inference that their free speech interests
outweigh the detrimental effect, if any, their grievances may have
had on the SWAT Team and VBPD. Accepting the allegations in the
Complaint as true and giving the Plaintiffs the benefit of all
reasonable factual inferences, the court cannot say that the
Plaintiffs have failed to demonstrate more than a sheer
possibility that the balance of interests tips in their favor.
See, e.g., Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir.
2009) (quoting Iqbal, 556 U.S. at 678). Accordingly, the
Plaintiffs have sufficiently shown, at this juncture, that their
interest in speaking outweighed the Defendants' interest in
promoting the efficient provision of public services, thus
satisfying the second prong of the McVey test.

### 3. Causal Relationship

Finally, the Plaintiffs must allege sufficient facts to
establish that their protected speech was a "substantial factor"
leading to the adverse employment actions taken against them. See
McVey, 157 F.3d at 277-78. The Plaintiffs must allege not only
that the Defendants were aware of their engaging in protected
expression, but also that there was "some degree of temporal
proximity to suggest a causal connection" between the Plaintiffs
speaking out about Kosmas and their being disciplined. Constantine
v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 501

(4th Cir. 2005). In addition to the showing of temporal proximity, the Plaintiffs must also plead factual allegations supporting the inference that their "protected speech was a motivating factor or played a substantial role in inducing the adverse action" taken against them by the Defendants. Peters v. Jenney, 327 F.3d 307, 323 (4th Cir. 2003) (citing Hall v. Marion Sch. Dist. No. 2, 31 F.3d 183, 193 (4th Cir. 1994)). Ultimately, the causation requirement is "'rigorous' in that the protected expression must have been the 'but for' cause of the adverse employment action alleged." Ridpath, 447 F.3d at 318 (quoting Huang v. Bd. of Governors, 902 F.2d 1134, 1140 (4th Cir. 1990)).

In this case, the Complaint alleges that the Plaintiffs voiced their concerns to their supervisors, including Cervera, "[d]uring the course of Kosmas' time on the SWAT Team," leading up to the time that Kosmas filed her EEOC Charge of Discrimination, on August 7, 2012. Compl. ¶¶ 48-49. It was not until more than two years later that Cervera suspended each of the Plaintiffs, ostensibly for their role in fomenting a hostile workplace. Id. ¶¶ 56-68. Such a "lengthy time lapse" between the protected expression and the discipline meted out tends to "negat[e] any inference that a causal connection exists between the two." Constantine, 411 F.3d at 501 (quoting Dowe v. Total Action Against Poverty in Roanoke Valley, 145 F.3d 653, 657 (4th Cir. 1998)). Additionally, the Complaint acknowledges that Cervera informed the

Plaintiffs that they were being disciplined for their awareness of and failure to stop subordinates from "engaging in inappropriate sexual, racial and/or religious behaviors in the form of statements and physical gestures." Compl. ¶¶ 57, 61, 65.

Nevertheless, the Plaintiffs claim that the reasons cited for the suspensions —— sexual discrimination and harassment —— were merely "pretextual," and the Defendants' true motives were to "retaliate against Plaintiffs for raising their concerns." Id. ¶¶ 87, 98. The Plaintiffs support this claim with the allegation that "[o]thers similarly situated received either zero discipline or lesser discipline when they . . . had not been vocal in alerting the Defendants to [Kosmas'] unsuitability for the SWAT Team and her threats to the safety of the public and her fellow members." Id. ¶ 71. Taking this allegation to be true at this stage of the proceedings, it suggests that the Plaintiffs' speech was, in fact, a "motivating factor" behind the Defendants bringing disciplinary charges against them. Peters, 327 F.3d at 323.

Moreover, the Complaint supports the inference that the reason for the gap of more than two years between when the Plaintiffs brought their concerns to Cervera, and when they received their suspensions, was that the Defendants changed their positions vis-à-vis the Plaintiffs, after Kosmas filed her civil suit against them in 2014. Compl. ¶¶ 51-55, 87, 98. On the other hand, once the factual record is developed through discovery, the

evidence may well show that the Plaintiffs were disciplined for precisely the reasons set forth in the charging memoranda provided to each of them.

At the Rule 12(b)(6) stage, however, the Plaintiffs' allegations warrant the inference that their engaging in protected expression was a "substantial factor" in the Defendants' decision to suspend them. See McVey, 157 F.3d at 277-78. Accepting the Complaint's allegations as true, and allowing all reasonable factual inferences, the Plaintiffs have sufficiently alleged that their protected speech was the "but for" cause of their suspensions, satisfying the causation requirement under the third prong of the McVey test.

### 4. Conclusion Under the McVey Factors

At this juncture, the Plaintiffs have sufficiently pled retaliation claims arising under the First Amendment to the United States Constitution and Article I, Section 12 of the Constitution of Virginia by properly alleging that (1) their complaints about Kosmas regarded a matter of public concern; (2) their interest in speaking on such a matter was not outweighed by the Defendants' interest in providing effective and efficient services to the public; and (3) their speech was a substantial factor in the Defendants' decision to suspend them. Therefore, the Defendants' Motion is **DENIED** with respect to Counts II and III of the Complaint.

25

## C. Count IV — Deprivation of Property Without Due Process

Count IV of the Complaint asserts a claim for violations of the Plaintiffs' right to procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution. The Plaintiffs contend they have a property interest in "continued public employment" by virtue of Virginia's Law-Enforcement Officers Procedural Guarantee Act, Va. Code Ann. §§ 9.1-500 et seq. Compl. ¶ 102. They argue that they were deprived of that property interest when they were suspended, and they did not receive due process of law prior to such deprivation. Id. ¶ 103.

In order to state a claim for deprivation of property without due process, the Plaintiffs must sufficiently allege that (1) they have a constitutionally protected property interest, and (2) they have been deprived of that interest by state action. See Stone v. Univ. of Md. Med. Sys. Corp., 855 F.2d 167, 172 (4th Cir. 1988); Bd. of Regents v. Roth, 408 U.S. 564, 569-70 (1972). If the Plaintiffs can assert these elements, then the court must determine what process is due and whether it was provided. See Stone, 855 F.2d at 172; Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). If adequate process was not provided, the deprivation is illegal. Loudermill, 470 U.S. at 541.

A constitutionally protected property interest arises when an individual is "entitled to a benefit created and defined by a source independent of the Constitution, such as state law." Huang,

902 F.2d at 1141 (citing <u>Roth</u>, 408 U.S. at 577). The Plaintiffs have alleged, and the Defendants do not dispute, that the provisions under Virginia Code §§ 9.1-500 <u>et seq.</u> create a property right in continued employment with the VBPD SWAT Team. Furthermore, neither party disputes that the Plaintiffs were suspended from their employment as VBPD SWAT Team officers. Therefore, the Plaintiffs have adequately alleged a deprivation of a property interest. The court must therefore turn to the final step of the inquiry and determine whether the Plaintiffs have sufficiently pled that they were not provided due process.

At a threshold level, the same Virginia statute that gives rise to the claimed property interest, also sets forth the procedures which must be followed prior to dismissing, demoting, suspending, or transferring for punitive reasons, a law-enforcement officer employed by the Commonwealth of Virginia. Va. Code Ann. §§ 9.1-500 <u>et seq.</u> The Plaintiffs do not allege that the Defendants failed to comply with any of the express requirements of these procedural provisions. However, the Plaintiffs assert that the process afforded to them was deficient because the Defendants were "motivated by self-interest and bias" in bringing disciplinary charges against them. Compl. ¶ 108. This bias ostensibly arose out of Cervera and the City being named as co-defendants, along with the Plaintiffs, in Kosmas' gender discrimination suit. <u>Id.</u> ¶¶ 106-07. Because Cervera was not an

impartial decision maker, the Plaintiffs contend that the disciplinary proceedings against them were entirely "lacking in fundamental fairness" and, therefore, they did not receive due process prior to being suspended. Id. ¶ 108.

The court agrees at the outset that "[a]n impartial decision maker is an essential element of due process." Bowens v. N.C. Dept. of Human Res., 710 F.2d 1015, 1020 (4th Cir. 1983) (citing Goldberg v. Kelly, 397 U.S. 254, 271 (1970)). Administrative decision makers "are entitled to a presumption of honesty and integrity, and absent a showing of bias stemming from an extrajudicial source, they are not constitutionally precluded from making the determination that they are directed to make by their employer." Morris v. City of Danville, 744 F.2d 1041, 1044 (4th Cir. 1984) (citations omitted). "This presumption can only be overcome by demonstrations of 'extrajudicial' bias stemming from other influences than the investigative involvement." Boston v. Webb, 783 F.2d 1163, 1166 (4th Cir. 1986) (citing Withrow v. Larkin, 421 U.S. 35, 55 (1975); Morris, 744 F.2d at 1044)).

Here, the Plaintiffs have alleged that the Defendants, specifically Cervera, were biased against the Plaintiffs because they were named as co-defendants in Kosmas' civil suit. Compl. ¶¶ 106-07. The Plaintiffs contend that the Defendants instituted disciplinary proceedings against them in order to minimize their liability to Kosmas. Id. ¶ 107. It is plausible that, as co-

defendants to a lawsuit outside of the VBPD's internal investigative process, Cervera and, by extension, the City, could be motivated to reduce their liability to Kosmas by throwing the Plaintiffs under the metaphorical bus. Indeed, the timeline in the Complaint supports such an inference; although Kosmas lodged a complaint with the EEOC in August 2012, it was not until after she brought suit, in February 2014, that the VBPD launched its investigation into the Plaintiffs' behavior. Id. ¶¶ 49-55.

The Defendants state that "any alleged bias is not 'from a source other than knowledge [the Defendants] acquired from participating in the case.'" Defs.' Mem. Supp. at 21 (quoting Bowens, 710 F.2d at 1020). But in so arguing, the Defendants appear to conflate the VBPD's internal investigation into Kosmas' allegations of discrimination and harassment, with her bringing a civil suit against the City, Cervera, the Plaintiffs, and other supervisory officers of the SWAT Team. The "case," as used in this area of jurisprudence, refers to the administrative investigative process, not to any lawsuits that arise out of the same set of facts. See Boston, 783 F.2d at 1166 (noting that the "due process requirement of an impartial tribunal is not violated simply because the ultimate decisionmaker was involved in an earlier stage of investigative or administrative proceedings" (emphasis added)); Morris, 744 F.2d at 1045-46 (police chief who sought employee's discharge at an earlier stage of disciplinary

proceedings was not biased in later stage); <u>Bowens</u>, 710 F.2d at 1020 (committee member who voted to suspend dentist was not biased despite having written a letter critical of a prior administrative settlement agreement between the dentist and the agency); <u>Harrell v. City of Gastonia</u>, 392 F. App'x 197, 204-05 (4th Cir. 2010) (per curiam) (city manager who presided over post-termination hearing was not biased simply by virtue of being employed by the entity that previously terminated employee). Kosmas' lawsuit, and the threat of liability therefrom, are separate from the VBPD's internal investigation, which commenced only after Kosmas filed her lawsuit. The internal investigation is the relevant "judicial" proceeding in this analysis, and Cervera's "extrajudicial" bias comes from another source — Kosmas' lawsuit. In other words, the threat of liability and possible damages from the lawsuit arguably influenced Cervera's actions during the subsequent internal investigation and in the resulting disciplinary charges and actions against the Plaintiffs.

Accepting the allegations in the Complaint as true and giving the Plaintiffs the benefit of all reasonable factual inferences, the Plaintiffs have sufficiently alleged that Cervera was biased in bringing disciplinary charges against them, thus rebutting the presumption that he acted impartially. Accordingly, the Plaintiffs have stated a claim for deprivation of a property interest, in violation of the Due Process Clause of the Fourteenth Amendment to

the United States Constitution. The Defendants' Motion is, therefore, **DENIED** with respect to Count IV of the Complaint.

### D. Count V — Deprivation of Substantive Due Process

Count V of the Complaint alleges that when the Defendants investigated and subsequently disciplined the Plaintiffs for voicing their legitimate complaints about Kosmas, the Defendants deprived the Plaintiffs of their right to substantive due process, also guaranteed by the Fourteenth Amendment to the United States Constitution. The Plaintiffs claim that the Defendants' actions "amounted to egregious and arbitrary governmental conduct that shocks the conscience," and "were corrupt and amounted to abuses of governmental power," Compl. ¶¶ 114-15, and, therefore, they are entitled to relief.

Whether the Plaintiffs have stated a substantive due process claim turns on whether the property interest being deprived is considered "fundamental" under the Constitution. Copenny v. City of Hopewell, 7 F. Supp. 3d 635, 638 (E.D. Va. 2014) (citations omitted). If the interest is fundamental, then the Fourteenth Amendment shields a plaintiff from "arbitrary or irrational deprivation, regardless of the adequacy of procedures used." Nicholas v. Penn. State Univ., 227 F.3d 133, 142 (3d Cir. 2000). If the interest is not fundamental, however, "the governmental action is entirely outside the ambit of substantive [due] process and will be upheld so long as the state satisfies the requirements

of procedural due process." Id. The majority of courts of appeals to have addressed this issue have held that continued public employment is not a fundamental property interest entitled to substantive due process protection. Guthrie v. McClaskey, 2012 WL 5494457, at *6 n.9 (W.D. Va. 2012) (collecting cases). The Fourth Circuit, though it has not squarely addressed the issue, has said that "[i]t is doubtful that" a public employee's continued employment "is a right properly subject to substantive due process review." Huang, 902 F.2d at 1142 n.10. The public employee's right to his position, "if it exists, is essentially a state law contract right, not a fundamental interest embodied in the Constitution." Id. (citing Regents Univ. of Mich. v. Ewing, 474 U.S. 214, 229-30 (1985) (Powell, J., concurring)). The court therefore finds that the Plaintiffs' interest in public employment, uninterrupted by disciplinary suspensions, is not a fundamental interest meriting substantive due process protection.

Moreover, even if the Plaintiffs had alleged the existence of a fundamental right, they have failed to allege conduct "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Hawkins v. Freeman, 195 F.3d 732, 738 (4th Cir. 1999) (en banc) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)). The Plaintiffs contend that after Kosmas filed her civil suit in 2014, alleging gender-based discrimination and harassment, the VBPD commenced an internal

investigation and, later, disciplinary proceedings against the Plaintiffs in which Cervera was named as the complainant. Compl. ¶¶ 54-55. After allowing each Plaintiff to respond to the charges, the VBPD suspended Willis for only forty hours, and Wilkerson and Shattuck for only twenty hours each, after which time each Plaintiff resumed his full duties with the VBPD. Id. ¶¶ 60, 64, 68. It may have been ill-advised for Cervera, a co-defendant in Kosmas' civil suit, to issue the Plaintiffs' suspensions himself, but such a conflict of interest is far below conduct that "involves abusing executive power, or employing it as an instrument of oppression," as required to state a substantive due process claim. Hawkins, 195 F.3d at 742 (internal quotation marks omitted); see also Copenny, 7 F. Supp. 3d at 639 (noting that "the [defendant's] actions need not be ideal in order to be constitutional"). Accordingly, for the foregoing reasons, Count V of the Complaint is **DISMISSED** for failure to state a claim upon which relief can be granted.

### E. Count VI — Deprivation of Liberty Without Due Process

Count VI of the Complaint asserts violations of the Plaintiffs' right to procedural due process guaranteed by the Fourteenth Amendment to the United States Constitution, but unlike Count IV, Count VI alleges that the Plaintiffs were deprived of a liberty interest. Specifically, the Plaintiffs contend that the disciplinary actions taken against them "placed a stigma on

Plaintiffs' reputations, branding them as boorish and crude civil rights violators, and undermining their future employment opportunities." Compl. ¶ 118.

Injury to reputation alone is not a liberty interest protected by the Due Process Clause. Siegert v. Gilley, 500 U.S. 226, 233 (1991) (citing Paul v. Davis, 424 U.S. 693, 708-09 (1976)). However, when "reputational injury [is] accompanied by a state action that 'distinctly altered or extinguished' [the plaintiff's] legal status," such as an adverse employment action, a due process claim arises. Shirvinski v. U.S. Coast Guard, 673 F.3d 308, 315 (4th Cir. 2012) (citing Paul, 424 U.S. at 711). Underpinning this rule is the concept that a public employer cannot deprive an employee of her "freedom to take advantage of other employment opportunities." Bd. of Regents v. Roth, 408 U.S. 564, 573 (1972). Thus, when a public employer publicly announces the reasons for an employee's discharge, a Fourteenth Amendment liberty interest is implicated. Sciolino v. City of Newport News, 480 F.3d 642, 645-46 (4th Cir. 2007) (citing Johnson v. Morris, 903 F.2d 996, 999 (4th Cir. 1990)). In order to state a claim for deprivation of a liberty interest, the Plaintiffs "must allege that the charges against [them]: (1) placed a stigma on [their] reputation; (2) were made public by the employer; (3) were made in conjunction with [their] termination or demotion; and (4) were false." Id. at 646 (citing Stone v. Univ. of Md. Med. Sys. Corp.,

855 F.2d 167, 172 n.5 (4th Cir. 1988)). If the Plaintiffs can sufficiently allege a protected liberty interest under this framework, then they are entitled to a so-called "name-clearing hearing" to allow them the opportunity to refute the accusations against them and repair their reputations. Harrell v. City of Gastonia, 392 F. App'x 197, 203 (4th Cir. 2010) (per curiam) (citing Sciolino, 480 F.3d at 649). Ultimately, "the constitutional harm is not the defamation itself; rather it is the denial of a hearing at which the dismissed employee has an opportunity to refute the public charge." Sciolino, 480 F.3d at 649 (internal quotation marks omitted).

In the present case, the Plaintiffs have alleged that the disciplinary proceedings stigmatized their reputations because they branded them as perpetrators of a work environment that is hostile toward women. Compl. ¶ 118. Furthermore, the Complaint alleges that the Plaintiffs flatly denied all allegations of misconduct, and that the disciplinary proceedings were merely a pretext for retaliating against the Plaintiffs for airing legitimate grievances against Kosmas. Id. ¶¶ 58, 62, 66, 71. Accepting the allegations in the Complaint as true and giving the Plaintiffs the benefit of all reasonable factual inferences, the court cannot say that the Plaintiffs have not sufficiently alleged that the disciplinary charges were false and cast an unwarranted stigma on their reputations as VBPD officers. The Plaintiffs have,

therefore, satisfied the first and fourth prongs of the Sciolino test. See Sciolino, 480 F.3d at 646.

The second and third prongs under Sciolino are not so easily met. The Plaintiffs state that the charges against then "were made public by Defendants," yet they offer no factual allegations to support this conclusion. Id. ¶ 119. This unsupported assertion is the type of "[t]hreadbare recital[] of the elements of a cause of action" that does not state a cause of action on which the court can grant relief. Iqbal, 556 U.S. at 678. The allegations in the Complaint refer to statements and comments made only in internal memoranda, during private conversations, and at meetings not attended by the general public. At the Rule 12(b)(6) stage, in order to plead that the disciplinary charges against them were made public, the Plaintiffs "must allege (and ultimately prove) a likelihood that prospective employers . . . or the public at large will inspect the file." Sciolino, 480 F.3d at 650. Additionally, the Plaintiffs "must allege that [a] prospective employer is likely to request the file from" the VBPD, id., and because the Complaint does not meet this standard, the Plaintiffs have not sufficiently pled the second prong of the Sciolino test.

Moreover, even if the Plaintiffs had sufficiently alleged that the disciplinary charges against them would be made public, they have not been "terminated or demoted," as required by the third prong of the Sciolino test. "Publication of stigmatizing

36

charges alone, without damage to 'tangible interests such as employment,' does not invoke the due process clause." <u>Johnson v. Morris</u>, 903 F.2d 996, 999 (4th Cir. 1990) (quoting <u>Paul</u>, 424 U.S. at 701). Thus, in order to state a claim for deprivation of a liberty interest, there must have been "some damage to [the plaintiff's] employment status." <u>Id.</u> Here, the Plaintiffs allege that they have "suffered not only short-term suspensions, but lost promotions, transfers, pay opportunities and many other benefits of employment," Compl. ¶ 120, yet offer no concrete allegation or explanation to support this "conclusory statement[]." <u>Iqbal</u>, 556 U.S. at 678. The Plaintiffs have not been terminated or demoted, nor have they alleged that their salaries have been cut. Indeed, the facts as alleged in the Complaint indicate that the Plaintiffs' employment status has not changed; they have at all relevant times remained supervisory officers with the VBPD SWAT Team. <u>Id.</u> ¶¶ 1-4. The Plaintiffs therefore have failed to sufficiently allege that the disciplinary charges were made in the context of a discharge or demotion, and thus have not met the third prong under <u>Sciolino</u>.

The Plaintiffs have not properly stated a claim for deprivation of a liberty interest because they have not alleged facts sufficient to meet the second and third prongs of the <u>Sciolino</u> test. Accordingly, Count VI of the Complaint is **DISMISSED** for failure to state a claim upon which relief can be granted.

## IV. SUMMARY

For the foregoing reasons, the Plaintiffs' claim for wrongful suspension under Virginia law (Count I) is **DISMISSED**; the Plaintiffs' claim for deprivation of substantive due process under the Fourteenth Amendment to the United States Constitution (Count V) is **DISMISSED**; and the Plaintiffs' claim for deprivation of a liberty interest without procedural due process under the Fourteenth Amendment to the United States Constitution (Count VI) is also **DISMISSED**. However, the Defendants' Motion to Dismiss is **DENIED** with respect to Counts II and III of the Complaint, the Plaintiffs' free speech claims, and with respect to Count IV of the Complaint, the Plaintiffs' claim for deprivation of a property interest without due process.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to counsel of record for all parties.

**IT IS SO ORDERED.**[9]

/s/
Rebecca Beach Smith
Chief
United States District Judge

REBECCA BEACH SMITH
CHIEF JUDGE

March 6 , 2015

---

[9] For reference purposes, an Index of this Memorandum Opinion and Order is attached.

## INDEX

I. FACTUAL AND PROCEDURAL BACKGROUND ........................... 2

II. STANDARD OF REVIEW ......................................... 6

III. ANALYSIS ................................................. 9

    A. Count I - Wrongful Suspension in Violation of
       Virginia Public Policy .............................. 9

    B. Counts II and III - Retaliation Under Article I,
       Section 12 of the Virginia Constitution and
       the First Amendment to the United States
       Constitution ....................................... 12
          1. Speech on a Matter of Public Concern ............. 14
          2. Balance of Employee and Employer Interests ....... 20
          3. Causal Relationship .............................. 22
          4. Conclusion Under the McVey Factors ............... 25

    C. Count IV - Deprivation of Property Without Due
       Process ............................................ 26

    D. Count V - Deprivation of Substantive Due Process ....... 31

    E. Count VI - Deprivation of Liberty Without Due
       Process ............................................ 33

IV. SUMMARY .................................................. 38